UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA BURGETT,

    Plaintiff,                             Civil Action No. 12-11361

       v.                            District Judge LAWRENCE P. ZATKOFF
                                         Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Angela Burgett brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #10] be DENIED.

## PROCEDURAL HISTORY

On July 28, 2009, Plaintiff applied for DIB and SSI, alleging disability as of June 1, 2006 (Tr. 178, 182). After the initial denial of her claim, Plaintiff requested an

administrative hearing, held on April 14, 2011 in Flint, Michigan (Tr. 54). Administrative Law Judge ("ALJ") Regina Sobrino presided. Plaintiff, represented by attorney Lloyd Pont, testified (Tr. 58-78), as did Vocational Expert ("VE") Stephanie Lorey (Tr. 78-92). On July 15, 2011, ALJ Sobrino found that although Plaintiff was unable to perform her past relevant work, she was capable of a significant range of other work (Tr. 20-22). On January 26, 2012, the Appeals Council denied review (Tr. 1-3). Plaintiff filed the present action on March 26, 2012.

## BACKGROUND FACTS

Plaintiff, born May 1, 1978, was 33 at the time of the administrative decision (Tr. 22, 178). She obtained a GED and worked previously as a direct care giver, production worker, restaurant worker, and waitress (Tr. 226, 229). She alleges disability due to an obsessive compulsive disorder ("OCD"); bipolar disorder; anxiety; and neck, back, and hip problems (Tr. 225).

### A. Plaintiff's Testimony

Plaintiff, a resident of Flint, Michigan, testified that she currently lived her mother (Tr. 59). She stated that she dropped out of school in 10th grade but later obtained a GED (Tr. 59).

Plaintiff testified that before ceasing work in early 2009, she performed inventory-related work (Tr. 60). She stated that she quit the job after her work load increased, adding that her work difficulties were exacerbated by her dislike of touching objects and audio hallucinations (Tr. 60-61). She alleged that she stopped working as a direct care worker in

2006 due to anxiety, her inability to work with others, and the lifting demands of the job (Tr. 61).

Plaintiff stated that she was unable to walk for more than one block, stand for more than 20 minutes, or lift more than 10 pounds (Tr. 62). She alleged difficulty sitting on hard surfaces, but denied other sitting problems or manipulative limitations (Tr. 62). She stated that she had difficulty climbing stairs and bending due to a pinched nerve (Tr. 63-64). She denied problems in self-care tasks, performing household chores, or reading (Tr. 64). Plaintiff stated that she did not have a current driver's license due to her failure to pay a traffic ticket (Tr. 65). She denied problems driving but stating that agoraphobia kept her mostly housebound (Tr. 65). She testified that a friend drove her to doctors' appointments (Tr. 65).

Plaintiff testified that she currently took Prozac for OCD and depression; Abilify for audio hallucinations and mood swings; Xanax for anxiety and panic attacks; and Trazodone to help her sleep (Tr. 66). In addition, she stated that she took Hydrochlorothiazide and Tenormin for hypertension; Motrin 800 for back problems; and Zantac (Tr. 66). She alleged the side effect of facial twitching from Abilify (Tr. 67). She stated that she received regular medical and psychiatric treatment (Tr. 67). She stated that steroid injections provided only temporary relief from back pain (Tr. 68). She denied physical therapy or recent inpatient hospitalizations (Tr. 88).

In response to questioning by her attorney, Plaintiff stated that she spent most of her waking hours cleaning the house (Tr. 69). She reported that since taking Prozac, she washed

her hands approximately 50 times a day in contrast to 500 times a day before starting the psychotropic drug (Tr. 69). She stated that living with her mother helped her cope with symptoms of agoraphobia, noting that she was reluctant to answer the telephone or door, shop for groceries or other basic needs, or keep doctors' appointments (Tr. 70). She indicated that unless required to leave the house for a medically-related problem, she would stay at home indefinitely (Tr. 70). She stated that she experienced anxiety in public places, adding that the condition was marked by a racing pulse, nausea, and sweating, adding that due to OCD, she was unable to use public bathrooms or ride a bus (Tr. 71). She alleged audio hallucinations thrice-weekly, describing them as voices "inside her head" (Tr. 71-72). She alleged further that depression caused her to sleep up to 20 hours at a time (Tr. 73). She testified that she engaged in self-mutilation activities (Tr. 74).

### B. Medical Evidence

#### 1. Treating Sources

In October, 2006, Jin Xiao, M.D. noted Plaintiff's claims of fatigue and the need to sleep 14 to 15 hours a day (Tr. 280). In June, 2007, a "psychosocial assessment" by Consumer Services, Inc. of Flint, Michigan noted that Plaintiff spent four hours each day taking care of her daughter (Tr. 314). Plaintiff alleged a history of physical and emotional abuse (Tr. 315). She was assigned a GAF of 40[1] due to unemployment, hyperension, OCD,

---

[1] A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR* ) (4th ed.2000).

and anxiety (Tr. 319, 326). In March, 2008, she reported that her psychotropic medication was effective, but she was having "racing thoughts" (Tr. 354). In October, 2008, Plaintiff drove herself to the emergency room for flank pain (Tr. 364). She was diagnosed with a urinary tract infection (Tr. 364).

February, 2009 psychiatric treating notes state that Plaintiff was taking online classes through the University of Phoenix (Tr. 342). She exhibited "favorable" results from medications including a stable mood (Tr. 342). She was assigned a GAF of 55-60[2] (Tr. 343). In April, 2009, Plaintiff showed good results from psychotropic medication (Tr. 337). Prescription records from July, 2009 show that Plaintiff was currently taking Abilify, Prozac, Paxil, and Klonopin (Tr. 330). Therapy records from the same month state that Plaintiff denied current thoughts of self-harm or medication side effects (Tr. 332-333). She was assigned a GAF of 55 (Tr. 334). August, 2009 treating records state that Plaintiff was cooperative, but exhibited confusion and anxiety (Tr. 440). A December, 2009 MRI of the lumbar spine showed a moderate disk herniation at L3-4 and a small disc herniation at L4-5 (Tr. 419-420). She was also diagnosed with "mild" degenerative disc disease (Tr. 420). February, 2010 treating notes state that Plaintiff was currently living with her boyfriend (Tr. 488). March, 2010 treating notes by Dr. Susan Hepker noted "narcotic issues" (Tr. 431). In April, 2010, Carol Cappuccio, M.D. performed a psychiatric examination of Plaintiff,

---

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR* )(4th ed.2000).

noting that Plaintiff's allegations of depression were inconsistent with her mood during the examination (Tr. 423-424). Plaintiff was appropriately dressed with good eye contact and hygiene (Tr. 423). She alleged that agoraphobia kept her essentially housebound (Tr. 422). Dr. Cappuccio assigned Plaintiff a GAF of 40 (Tr. 423). In June, 2010, Plaintiff was discharged after failing to contact her treatment providers (Tr. 489).

In September, 2010, Rama D. Rao, M.D. administered a steroid injection at L5 without complications (Tr. 418). October, 2010 psychiatric treating notes state that Plaintiff's current GAF was 60 to 65[3] (Tr. 449, 484). She denied hearing voices (Tr. 460).

In March, 2011, Plaintiff was discharged after staff were unable to locate her (Tr. 472).

### 2. Non-Treating Sources

In April, 2007, Walter R. Drwal, Ph.D. performed a psychological evaluation of Plaintiff on behalf of the SSA (Tr. 289-299). Dr. Drwal noted that the results of psychological testing were consistent with "symptom magnification" (Tr. 290, 294). He found that because Plaintiff was "engaging in . . . a great deal of embellishment, it [was] difficult to determine what her exact symptomology would be" (Tr. 298).

In October, 2009, John D. Scoberg, Ph.D. performed a psychological examination of Plaintiff on behalf of the SSA (Tr. 366-373). Plaintiff alleged obsessive hand washing,

---

[3]GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 32 (4th ed.2000).

symptoms of agoraphobia, audio hallucinations, and self mutilation (Tr. 366-369).  Dr. Scoberg observed that Plaintiff was fully oriented with a logical thought process (Tr. 369). Dr. Scoberg opined that Plaintiff "[would] be unable to engage in work-like activities" without "intensive and long-term [outpatient] treatment" or a month of inpatient treatment (Tr. 371).   He assigned Plaintiff a GAF of 32 (Tr. 371).

The following month, Thomas T. L. Tsai, M.D. performed a non-examining Psychiatric Review Technique of the consultative and treating records, finding the presence of affective and anxiety-related and personality disorders (Tr. 374, 377, 379, 381).  Dr. Tsai found moderate limitations in maintaining social function and concentration, persistence, or pace, but concluded that Plaintiff could perform unskilled work (Tr. 384, 386).  Dr. Tsai also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate difficulty understanding and carrying out detailed instructions, performing activities within a schedule, accepting instruction and criticism, and responding appropriately to changes in the work setting[4] (Tr. 388-389).  Dr. Tsai concluded as follows:

> The claimant is able to understand, carry out, and remember simple instructions; [] respond appropriately to supervision, coworkers and work situations; and deal with most changes in a routine work setting[].  There are no problems with attention and there is sufficient concentration to perform simple 1-2 tasks all on a routine and regular basis (Tr. 390).

In December, 2009, R. Scott Lazzara, M.D. performed a physical examination of Plaintiff on behalf of the SSA (Tr. 392-398).  Plaintiff reported that she stopped working in

---

[4]Dr. Tsai completed the same assessment in April, 2007, making almost identical findings (Tr. 283-285).

2006 due to back pain (Tr. 394). She stated that she was able to vacuum, drive, read, snowmobile, and work on art projects (Tr. 394). She exhibited normal insight, judgment, concentration, and memory (Tr. 395). Plaintiff exhibited mild difficulty squatting, tenderness of the S-1 joint, and a mild left sided limp (Tr. 395). Dr. Lazzara found the absence of orthopedic pathology (Tr. 398). The following month, Lora Stitman performed a Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 401). Stitman limited Plaintiff to occasional climbing and frequent (as opposed to *constant*) balancing, stooping, kneeling, crouching, and crawling (Tr. 402). Stitman, noting the absence of additional limitations, found Plaintiff's claims of physical limitation "not fully credible" (Tr. 405).

### C. Vocational Expert Testimony

VE Stephanie Lorey classified Plaintiff's former work as a certified nurse's assistant as semiskilled and production work as unskilled(Tr. 81, 277).

The ALJ posed the following hypothetical question to the VE, taking into account Plaintiff's age, education, and work experience:

> Assume a person who's limited to performing no more than light work, as that term is defined in the Social Security regulations and in the Dictionary of Occupational Titles [("DOT")].[5] The person should not have to climb ladders, can only

---

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50

-8-

occasionally climb stairs, stoop, and crouch. The person should not be exposed to hazards. Assume a person limited to simple, repetitive work that does not involve understanding, carrying out, or remembering more than one and two-step tasks. The work should be low stress, and I mean by that no fast-paced work, no work that involves quotas, no assembly line work. The person should not have to deal with the public. Could someone with those limitations do the production worker job? (Tr. 81-82).

In response, the VE found that although the hypothetical individual would be unable to perform any of Plaintiff's former jobs, she could perform the unskilled, exertionally light work of a hand packer (4,900 positions in the regional economy); small part assembler (27,000); and sorter (1,300) (Tr. 83). In the sedentary category, the VE found that the individual could work as a bench hand (2,150); sorter (3,200), and table worker (2,200) (Tr. 83). The VE found that a preclusion on exposure to vibration, combined with above-stated limitations would reduced the assembler jobs by 50 percent (Tr. 83-84). The VE stated that her testimony was consistent with the information found in the DOT (Tr. 85).

In response to questioning by Plaintiff's attorney, the VE stated that the inability to meet 75 percent of the required production rate, stay on task for 80 to 90 percent of the workday, or touch objects due to OCD would preclude the above jobs (Tr. 86-88). The VE stated further that the inability to communicate with a supervisor or distractions due to "internal stimuli" up to one third of the day would also preclude all work (Tr. 89). She reiterated that her job testimony involved jobs involving only minimal communication with

---

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

coworkers (Tr. 91).

### D.   The ALJ's Decision

Citing the psychological and medical transcripts, the ALJ found that Plaintiff experienced the severe impairments of "degenerative joint disease, degenerative disk disease, an affective disorder, and an anxiety-related disorder" but that none of the conditions met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr.12-13). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional restrictions:

> [N]o climbing of ladders; occasional climbing of stairs, stooping, and crouching; and no exposure to hazards. The claimant can perform simple, repetitive work that is low stress (*i.e.* no fast-paced work, no work that involves quotas, and no assembly line work), and that does not involve dealing with the public (Tr. 14).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform any of her former work, she could perform light work as a hand packer, small parts assembler, and sorter, as well as the sedentary work of a bench assembler, sorter, and table worker (Tr. 21).

The ALJ discounted Plaintiff's allegations of disability, noting that Plaintiff's symptoms were "adequately controlled" when she was in compliance with treatment (Tr. 19). The ALJ cited October, 2008 and February, 2009 records showing good results from medication and a bright affect (Tr. 19).   In regard to physical limitations, the ALJ observed that Plaintiff's claims of physical limitation stood at odds with her conservative treatment, the consultative observations, and testimony that she was capable of performing household

chores (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Treating and Consultative Records

Plaintiff argues first that the ALJ erred by failing to state the amount weight accorded to the treating source opinions. *Plaintiff's Brief* at 13-14, *Docket #10* (citing *Wilson v. CSS,* 378 F.3d 541 (6th Cir. 2004)). On a related note, she faults the ALJ for failing to explain her reasons for declining to adopt Dr. Scoberg's October, 2009 consultative opinion that inpatient treatment was required. *Id.* at 14 (citing Tr. 371).

Plaintiff's reliance on *Wilson* is misplaced. In *Wilson,* the Court found that the ALJ's failure to explain the reasons for rejection of a treating opinion of disability constituted reversible error. 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2). In contrast here, no treating source offered an opinion as to whether Plaintiff was disabled or even an assessment of her

work-related limitations. Moreover, the ALJ's decision included a thorough and accurate summation of the treating records (Tr. 15-18).

Likewise, Plaintiff's argument that the ALJ ought to have adopted Dr. Scoberg's consultative opinion is unavailing. Because Dr. Scoberg was a one-time consultative, rather than treating physician, the presumption that his opinion is entitled to controlling weight does not apply. *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994). As such, his findings were "entitled to no special degree of deference." *Id.* (citing *Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989)). For the same reasons, the ALJ was not obliged to provide "good reasons" for declining to adopt Dr. Scoberg's opinion that Plaintiff required long-term outpatient or month-long inpatient treatment. *Wilson,* at 544.

Further, the ALJ's rejection of Dr. Scoberg's findings is also well explained and supported. The ALJ noted that the GAF of 32 assigned by Dr. Scoberg (indicating impairment in reality testing or a major impairment in several areas of functioning) stood at odds with the consultative source's observations that Plaintiff was fully oriented, had intact memory and judgment, and was able to manage her benefit funds (Tr. 17, 20, 369). The ALJ also noted that the disability claim was undermined by the fact that Plaintiff obtained good results when attending therapy and taking psychotropic medication (Tr. 16-20).

### B. The Hypothetical Question

Plaintiff's contention that the ALJ erred by omitting claims of disabling OCD and anxiety symptoms from the hypothetical question is also unavailing. *Plaintiff's Brief* at 14-

15. First, the ALJ was not required to include unsubstantiated limitations in the hypothetical question. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994). The ALJ cited medical records from July and October, 2008 and February, 2009 showing that when Plaintiff was compliant with her therapy and medication, symptoms of depression and OCD were reduced (Tr. 19). Comparing treating notes from June and August, 2007, she observed that Plaintiff made significant improvement when medicated (Tr. 19). The ALJ reasonably concluded that Plaintiff's relapses were attributable to her failure to take her medication (Tr. 19). The omission of Plaintiff's allegedly extreme limitations from the hypothetical question did not constitute error. For the same reasons, the ALJ's finding of moderate (rather than marked or extreme) social limitations, drawn from the Psychiatric Review Technique, does not constitute error (Tr. 13, 386).

Plaintiff is also incorrect that the hypothetical restrictions of "simple, repetitive work that is low stress and does not involve dealing with the public" (Tr. 14) were inadequate "as a matter of law" to account for moderate limitations in concentration, persistence, or pace ("CPP"). *Plaintiff's Brief* at 14-15 (citing *Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2010)).

*Ealy* found that the modifiers of "simple, repetitive" were inadequate to describe the claimant. Here, the hypothetical limitations related to Plaintiff's mental conditions, stated in full, are "simple, repetitive work that does not involve understanding, carrying out, or remembering more than one and two-step tasks. The work should be low stress . . . no fast-

-14-

paced work, no work that involves quotas, no assembly line work" (Tr. 82). *Ealy* does not hold that the terms "simple, repetitive," or similar descriptives are intrinsically inadequate to address moderate CPP deficiencies. Rather, the *Ealy* Court determined that the hypothetical limitations of "simple, repetitive"(drawn from a non-examining medical source) impermissibly truncated the source's conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.,* 594 F.3d at 516. The position that "simple and repetitive" or synonymous terms are *always* insufficient to address moderate CPP deficiencies (even where the record does not support more stringent limitations) reflects an erroneous reading of *Ealy*. In this case, the hypothetical question adequately accounted for Plaintiff's deficiencies in CPP by precluding fast-paced, quota or assembly line work.

Further, a number of courts in this district have found the terms simple, routine, and unskilled, without more, are sufficient to account for the claimant's moderate concentrational limitations. *See Lewicki v. Commissioner of Social Security*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010)(the modifiers of "simple routine work" adequately account for moderate deficiencies in CPP); *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, *7 (E.D.Mich. June 16, 2008))(same). In this case, Plaintiff's credible allegations of limitation did not require greater hypothetical

limitations than those found chosen by the ALJ.

Moreover, a review of the transcript shows that substantial evidence supports the ALJ's non-disability determination. Plaintiff's psychological problems did not prevent her from taking online college courses (Tr. 342). Despite her claims that she was housebound and did not drive, October, 2008 emergency room records show that she was able to drive herself to the hospital when required (Tr. 364). Plaintiff's professed social limitations did not prevent her from forming relationships (Tr. 488). Her allegations of depression were noted to be inconsistent with her mood during the examination and her well-kempt appearance (Tr. 423-424). Examination notes state that Plaintiff exhibited good hygiene (Tr. 423). A consultative physical examiner observed that she exhibited normal insight, judgment, concentration, and memory (Tr. 395).

In closing, I note that my decision to uphold the ALJ's findings should not be read to trivialize Plaintiff's personal and psychological problems. Nonetheless, the ALJ's determination that she was capable of a significant range of work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #10] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

        **s/ R. Steven Whalen**
        R. STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Date: April 29, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on April 29, 2013.

s/Johnetta M. Curry-Williams<br>Case Manager